ADDITIONAL PARTIES

1) THE HARTFORD FINANCIAL SERVICES GROUP, INC.

2) Laduska Anne Haney – Address Unknown

3) Carol Morris – Address Unknown

4) Zeke Delgado – Address Unknown

5) Mike Fiske – Address Unknown

6) Twin Cities Fire Insurance Company - 501 Pennsylvania Parkway Suite 400,

   Indianapolis, IN 46280-0014 – A Division of The Hartford

7) Berkshire Hathaway – c/o CARA A. LAZURE

   3555 FARNAM STREET

   SUITE 1440

   OMAHA, NE 68131

8) United States Liability Insurance – c/o JERRY RAUTERKUS

   SUITE 100

   10330 REGENCY PARKWAY DRIVE

   OMAHA, NE 68114

9) Several Unknown Employees

10)     Concentra

11)     Dr. Tegumsen Wakwaya

12)     Premier Spine Care

13)     Dr. John Ciccarelli

14)        PA Amy Slesky

15)        St. Luke's South Primary Care

16)        Dr. Stephen Nolker

**Defendants Added:**

17)        Dr. David Cymer

18)        Dr. Edward Prostic

19)        Johnson Count Imaging

20)        John M. Graham, Jr.

21)        The Steven G. Piland Law Firm

22)        Steven G. Piland

23)        Melinda Young

24)        Matthew Bretz

25)        The Law Firm of Bretz & Young

26)        Tim Elliot

27)        The Time Elliot Law Firm

28)        Greg Goheen

29)        Darryl Wynn

30)        Jodi Fox

31)        Other unknown persons

32)        The Law Firm of McAnany, Van Cleave and Phillips

33)       Administrative Law Judge Kenneth Hursh

34)       Special Administrative Law Judge Jerry Shelor

35)       The United States District Court for the District of Kansas

36)       Judge Katherin Vratil

37)       Judge Angel D Mitchell

## FACTUAL BACKGROUND

38)       The factual background of the prior pleadings is incorporated as

Exhibits 1 through 7. And I am sorry. But this case is necessary to save my

life, possibly imminently, as my health condition has gotten substantially

worse. I intended and still intend, though I know it is not possible, to write a

perfect pleading, because that is all that the court will accept. But this is

necessary to preserve my rights, as appointment of counsel will also likely

be necessary to properly plead these claims and restore my access to health

care that now, more than ever before, is necessary to preserve my life.

39)       I never know where to begin, because I am the victim of eleven years

worth of relentless litigation abuse, inflicted upon me by both lawyers and

judges in their efforts to deny me justice AND medical care as a result of my

workplace injury sustained on January 9th, 2012.

40)       I am NOT a vexatious litigant. I am a severely disabled man who is

incapable of defending my own rights in a court of law under the rules and

3

"standards" demaded by opposing counsel and applied by the judges in their

decisions.

41)     And this case represented something new for me…all of the abusive

litigation tactics that I was accustomed to from opposing attorneys were

engaged in by the judges themselves; while refusing to even serve

summonses upon the defendants to get their answers, arguments denials, or

even their confessions which would establish that every word that I have

pleaded is true and that all of my rights to relief are just.

42)     As I stated in response to the court's Reports and Recommendations;

if these arguments had been filed by the attorneys, in many instances they

would be subject to sanction under Rule 11. If many of the denials of fact

stated by the judges had been given as testimony by defendants, that

testimony would have constituted perjury and been independently actionable

under a number of valid legal theories.

43)     But for eleven years I have been subjected to relentless litigation

abuse inflicted upon me by judges themselves. This includes not only the

physical assault by Administrative Law Judge Kenneth Hursh; but also the

participation by judges and Kansas Supreme Court justices in the threts to

have me murdered which were made on December 15th, 2015, with the

explicit demand that I drop all of my claims against OnForce, The Hartford

and Berkshire Hathaway; and that they would have me murdered, make my murder look like a suicide, but that they "will let you leave the state with as much as you can carry."

44)      I have heretofore not named the specific judges and justices involved because their threats were real; and their threats continue to be very real to this day. At no point has anyone ever said "We're just kidding. We won't really murder you. We just wanted you to stop and surrender all of your rights to relief."

45)      And that is a difficult thing to say to a judge; not only because judges will initially not believe me, and will consider the very fact that I alleged judicial involvement in the threats to murder me over these claims; but also because the threats to murder me came about from judges trying to cover up the abusive acts of other judges, including the physical assault by Administrative Law Judge Kenneth Hursh and his obvious involvement in the conspiracy to delay my workers compensation claim and the attached requests to my attorney and ultimately to the court itself to present/adjudicate my claims of fraud. In other words, I am deathly afraid of making any allegation against judges for fear that I will be murdered; because that is one of the primary reasons that judges participated in the conspiracy to threaten me with murder on December 15th, 2015.

46)     The other problem is that a conspiracy of this magnitude is nearly

impossible to prove without law enforcement intervention, discovery,

depositions, cross examination, demonstrating the lack of credibility of the

witnesses against me, or with confessions from some of those involved.

47)     And no one confesses anything when there are no risk of

consequences as long as they remain silent about their crimes. People MUST

be subjected to the penalty of perjury and prosecution of their crimes to elicit

their testimony some times. That is particularly true of criminal conspiracies

and racketeering enterprises (which are substantially and relevantly two

completely different things.)

48)     And to be clear before I move forward, there are also substantial and

relevant differences between small acts of conspiracy and big acts of

conspiracy, such as the conspiracy to threaten me with murder if I do not

drop these claims.

49)     But the law of conspiracy is that if you participate in a criminal

conspiracy, whether your participation is small or large, and whether your

participation is direct or indirect; you can be held liable for the acts and

practices of every other conconspirator, and for the damages, including for

the damages when the long-standing conspiracy ultimately leads to the

wrongful death of a victim…or in these instances, to the wrongful death of literally thousands of similarly situated victims every year.

50)     My health continues to deteriorate because everyone involved in these conspiracies continues their involvement through repeated acts constituting interstate wire and mail fraud, witness/victim intimidation, obstruction of justice, perjury and suborning of perjury, and civil rights violations with the intention of preventing me from getting medical care necessary not only to restore my health, but also to prevent my death.

51)     My health has now deteriorated directly as a result of an additional four years of litigation abuse by opposing counsel and opposing parties.

52)     And as I stated earlier, for the first time…overtly at least…the judges themselves are the ones making the fraudulent legal arguments which have delayed my medical care and obstructed my access to justice for another four years.

53)     As a result, I have no choice but to advance the claims against the judges as well.

54)     And even though I do so knowing the risk that I will incite further retaliation, though hopefully not to the extent of threatening me again with murder or following through on the original threats of murder; my health condition has now deteriorated to the point that I am literally at risk of

imminent wrongful death if these defendants and every other future

defendant who will agree to join the same conspiracies, enterprises, and

deceptive and unconscionable acts and practices against me are stopped and

medical care is made available to me before I die.

55)      So I affirm once again that my claims are supported by current law

and or by arguments for new law or for changes to existing decisional/judge

made law; including without limitation my claims against the judges

themselves for their participation, allegedly maliciously and intentionally in

furthering the original conspiracies, thus crippling me, terrifying me, and

putting me at imminent risk of wrongful death.

56)      To put it more concisely: under no circumstances can I be expected as

an American citizen to allow ANYONE to interfere with my medical care

and thus cause my wrongful death. Under every imaginable circumstance

where a defendant or defendants are putting a human life at risk and they

refuse to stop their crimes, the victim MUST be allowed to seek judicial

relief; and the victim must be allowed to receive judicial relief, even if they

cannot afford an attorney and are incapable physically and psychologically

of defeating professionally trained lawyers, and now judges, in adversarial

competitions to determine whether I live or die.

57)     I cannot write anything that does not plead explicitly how the judges
are wrong fatually, legally, and even philosophically; because every single
one of my judges is willing to let me die for no other reason than because I
cannot afford a lawyer. And now the judges have engaged in a series of
illegal and unethical and fraudulent practices for which I would have
undeniable rights to relief except for the judges self-proclaimed immunity.

58)     And because my life depends upon judges no longr engaging in
deceptive, unconscionable, or illegal acts in the adjudication of my claims; I
must challenge the very core of their judicial immunity as a prerequisite to
saving my life.

59)     And I have that right under FRCP 11 and under K.S.A. 60-211, the
Kansas Rules of Civil Procedure.

60)      But I cannot write anything now, nor could I write anything at all
accusing judges of crimes against me since December 15th, 2015 when
judges and justices of the Kansas Supreme Court literally threatened to have
me murdered if I did not drop THESE specific claims.

61)     This is an element of my mental incapacity….that in addition to being
severly disabled due to the eleven years of denials of medical service; I have
also been terrified of being murdered at the order of Judges and Justices of
The State of Kansas; and further terrified that even alleging prejudice or bias

against the judges of the District Court for the United States District of

Kansas would lead to similar, though hopefully not as extreme, retaliation

which would cost me my access to health care for the rest of my life.

62)     I tried to write Motions for change of judge in the currently disputed

cases when it became apparent that Judges Vratil, James, Mitchell and

Schwartz were refusing to believe me, and refusing to grant presumptions of

truth, and using the same "procedural trickery" used by attorneys and judges

previously to secure dismissals without allowing any adjudication upon the

merits. And I could not write those motions, even though I believe that these

judges prejudice and bias against me are well documented in the record, for

fear of retaliation that is inextricably intertwined with the previous threats to

murder me.

63)     So you need to know right up front, that the reason, still, for my

pleadings being rambling, incoherent, and poorly organized and incomplete

IS my physical and psychological disabilities alone. If at any point

previously my physical and psychological disabilities…including my

inescapable fear of being murdered over these claims…had been removed, I

could have written better pleadings. And or course, as I will explain below,

if my disabilities had been removed, it would have worked as a tacit

admission that my disabilities are real; and then we would mostly only need to address the issues of damages.

64)    This is important, because among the most egregious examples of the judges' demonstrated prejudice and bias is the fact that they ruled, as if upon the merits, that because I can type anything at all, it proves that I am not incapacitated, not disabled, not a person with disabilities, and not "qualified" to receive medical care. The prejudice against the disabled cascades naturally in this way when people are engaged in obstructing justice in any context for disabled people. Their first defense is to always argue that they do not consider the victim disabled. And when your defense is intended/planned/trained by attorneys and employers to be that you do not consider the victim disabled; you MUSt in order to preserve that lie deny the person medical care, no matter how strong the evidence of their need for medical care might be. You must deny the need for medical care, because you cannot simultaneously grant me the surgeries that I need and argue that I am not disabled and do not need surgery.

65)    Phrased another way…the moment that the defendants admit that I am disabled; they are admitting that they were wrong the entire time. Whether their reasons for being wrong were negligence (including malpractice), fraudulent, discriminatory, bigoted, biased, political, economic or financial;

or otherwise illegal and actionable in a court of law; they cannot admit they were wrong without admitting liability. And they cannot allow me to have medical care or even to win medical care through a court of law

66)      because that too would prove their guilt and liability.

67)      And that collectively is how hundreds of people committed literally thousands of individual counts/crimes against me over the course of the past ten years.

68)      It is my belief, and it was argued by opposing counsel, that the fact that I sued so many people is being construed by the court as evidence that I am a "vexatious" litigant, and therefore that my claims do not have merits. This, to use the vernacular, is putting the cart before the horse. It is entirely possible and true in this case that hundreds of people can conspire against one man; especially when that man is seeking workers compensation and disabilitiy benefits.

69)      It began with three companies: OnForce, The Hartford, and Berkshire Hathaway (plus several subsidiaries owned by The Hartford and Berkshire Hathaway) creating an enterprise to defraud OnForce Service providers.

70)      But, I must note this even though I am sure it is incorporated from among the other facts included by reference; that being an OnForce "Service Provider" is not the equivalent of being an employee or even an independent

contractor under a subcontract to OnForce. The nature of their business, as admitted in the case of Sullivan v. WorkMarket, is that they were and are a software company that operates a website which is a "marketplace" to connect service buyers and service providers.

71)     Never was I ever legally bound under the Kansas Workers Compensation Act. I was just forced into the Kansas Workers Compensation system by my privately chosen physicians refusing service on the grounds (initially) that I was injured at work. At no point did any of the doctors who denied me service make an effort to determine if, legally, I was subject to the workers compensation act versus entitled to medical care through my private insurance. They just denied me medical care from the get go; and in some cases explicitly stated that they were doing so because of their refusal to perform services under the workers compensation act.

72)     And as I tried to explain, I provided them with my private insurance too. They could have provided their services under my private insurance and left all legal disputes to be resolved between my self, OnForce, and my health care insurers. But my doctors, often explicitly, stated that they would not provide me with service and then created medical records in which they expressed medical opinions without even doing medical examinations, allegedly to intentionally obstruct my workers compensation claim *in*

*addition to* depriving me intentionally of the benefits of my private health insurance and of their contrats to provide medical services.

73)     As a result, even though the factual backgrounds have substantial inter-relatedness; this court was wrong to state or imply that my failure to win judgmens against the privately contracted physicians somehow had relevance or even res judicata as to my claims against WorkMarket, OnForce, The Hartford, Berkshire Hathaway and the other defendants.

74)     At no point was I required to file all of my claims simultaneously, either under the tort and common law claims, or under the statutes. To rule so would overturn hundreds of years of prosecution of coconspirators and enterprise racketeers in separate trials.

75)     The defendants were lumped into logical groups based upon the specific interactions, conspiracies, events etc.  But they were all always and remain subject to either joinder or severance of parties into individual claims.

76)     Thisis very relevant as the court cited to the "voluminous" pleadings as not plain and concise, and thus a rules violation. But the length of the pleadings was due to the complexity and the need to plead extensive factual background from which conspiracies, enterprises, and racketeering could be inferred. None of the individual factual backgrounds against individual

14

defendants was "voluminous." And I had case law that because of my
disabilities I've misplaced and cannot find in which claims were remanded
from the court of appeals because the reason that the pleadings were so long
was because of the number of defendants and number of claims; and the
District Court was wrong to just do a page count and call it a rules violation.

77)     The other reason is that ten years of litigation abuse has taught me to
anticipate the arguments that lawyers and judges will use; and has also
taught me that very often those arguments are not even fully expressed
UNTIL they are expressed in a judgment; at which point I was denied any
opportunity to respond to the arguments, citations, or reasoning used by the
judges sua sponte to dismiss my claims when I had, in fact, sufficiently
defeated the arguments as they were presented by defendants and their
counsel initially.

78)     This case took that to another extreme, with the judges not even
serving the defendants, and explicitly making the arguments up for
themselves as a part of the section 1915 screening process.

79)     But the judges' arguments were similarly based upon misstatements
of case law and misstatements of the facts which I was unable to convince
the judges were wrong; both because of the alleged prejudice and bias
against pro se litigants and because of the previous frauds committed on the

court and against me in the earlier actions which led these judges to the prejudicial position that there is simply no way that I am telling the truth or ever had any legal rights to relief.

80)     And that again is because they consider it vexatious to sue so many people over so many things; as if a single person could not be the victim of hundreds of people motivated by the same discrimination, prejudice and bias.

81)     A simple look at our nation's history shows that hundreds and even millions of people can and often do conspire; though we usually do not call it a "conspiracy" when it is millions of people. The Secession from the United States by the Southern States is not called a "conspiracy" though the nature of their secession was the largest conspiracy in our history. The KKK is a conspiracy that involved millions of people. And when they could not win the repeal of Social Security Disability, workers compensation laws, welfare laws and other benefits to the poor and disabled which the right wing of our nation consider "socialism"; many of them, millions of them, participated in conspiracies to deprive disabled people of medical care and benefits one disabled person at a time. They call it "adversarial litigation" but its nature is still conspiracy, especially when it includes doctors creating false medical records, insurance companies committing wire and mail fraud,

and attorney directed destruction of evidence and creation of false evidence to support the denials of benefits to genuinely disabled people.

82)     It is admittedly a unique use of the term "conspiracy" but it is conspiracies none the less.

83)     And I only named as defendants those people who personally and directly harmed me through their involvement in these conspiracies.

84)     And this is the other reason I cannot be "concise". I've been victimized too many times by too many people for too long; and I know that judges refuse to admit the truth of what they know about the conspiracies against injured workers, disability, and welfare claimants. You actually know that these conspiracies are real; that they exists; and that they target the civil rights of the disabled directly, in addition to our human rights. You know this; but you still call it 'vexatious" and "implausible" or "conclusory" even when you know and even when I submitted evidence that proves the most essential elements of my claims.

85)     I know that the prejudices are against me, so I must overplead the facts, and this is an example of overpleading that the conspiracies against disabled people and workers compensation claimants specifically are very real, standard tactics nationwide, and often involve not just employers and nsurers but dozens of doctors in each individual case as well.

86)    And in my case, it was complicated greatly by the patently illegal

practices of OnForce, The Hartford and Berkshire Hathaway; and then

complicated even further by the broad based conspiracies against people

with Tarlov Cyst Disease, which I suspect my judges have heard about for

the first time in their careers in this series of cases.

87)    But even though you've likely never heard of Tarlov Cysts before;

you still judged me according to stereotypes, prejudices and biases under

whch you consider it implausible that a dozen doctors would actively

conceal cysts that they all could see on the MRIs.

88)    And it was not until May of 2020 that I finally got the CORRECT

MRI according to the standards published by The Tarlov Cyst Disease

Foundation that even a lay person could see the cysts crushing adjacent

nerve roots; thus proving beyond any reasonable shadow of a doubt that my

disabilities are real, and are caused by the combination of the untreated

herniated discs and the Tarlov Cysts.

89)    I would have gotten that MRI sooner if this court had not prejudicially

dismissed my claims and had instead ordered the health care defendants to

stop discriminating against Tarlov Cyst Disease, to stop providing disparate

impact to patients with Tarlov Cyst Disease, and to do the correct MRI and

properly report the Tarlov Cysts *before* my claims were dismissed on the

grounds of being poorly pleaded. In other words, I would have been able to get injunctive relief early in 2019 if this court had not presumed that I *must* not be telling the truth; because it's not believable that so many doctors would conspire against one person to 1) deny disability benefits, and 2) cover up the systematic malpractice against everyone with Tarlov Cyst Disease.

90)    That being said, I have tried and failed again to try to write concise and short and plain pleadings. And I have failed because of the pain and because of the fear…the exact same reasons that I failed in 2019 and the exact same reasons that I failed at every point after December 15th, 2015.

91)    When I was threatened with murder to cover up these claims.

92)    I have made literally hundreds of recordings of every time that my pain and mental health issues prevent me from completing legal pleadings. I can very literally prove that contrary to the rulings of these judges, my disabilities ARE the primary reason that I cannot write proper legal pleadings, motions and briefs.

93)    You can literally pick a day, and I can produce audio and or video recordings of my flare-ups of symptoms which totally incapacitate me until the cysts drain and return to their undilated size. But even when not fully inflated, the cysts and the herniated discs still cause unbearable pain, or

perhaps I could say barely bearable pain. But the barely bearable becomes

unbearable with as little as ten minutes of light work or twenty minutes to

one hour of even sedentary work like typing.

94)    Today, for example, I've been trying for seven hours, and I have to

stop for two for every one hour that I type, to the effect that I've only been

able to do three hours of typing/copy and pasting in more than eight hours of

trying. And as you can plainly see, what I do type is sporadic and rambling

and incoherent (but not unintelligible … A relevant difference).

95)    Thus I am once again required to rely upon incorporation by reference

of all of the factual background that I've previously pleaded; and to move

the court for appointment of counsel to preserve my rights and to ultimately

save my life.

96)    To this effect I am incorporating the original pleadings, the pleadings

from WorkMarket and the pleadings from the University of Kansas et. Al.

cases to complete the factual background upon which all of my rights to

relief are sustained.

97)    And I will attempt in the few hours I have remaining to itemize counts

to the best of my ability; though I assure you that I will fail to complete that

task, and particularly fail to complete it "like [you] were taught in law

school.

20

My life depends upon the premise that a United States citizens civil rights and human rights are NOT dependent upon being presented to the court in a particular way that attorneys and judges were taught in law school. If anything, our history demonstrates the exact opposite, as at the founding of this nation a large portion of our population was even illiterate; and our nation was founded upon the principle that even they had rights which could not be taken away by a sovereign without due process of law.

98)    In her judgments dated August 27th, 2019, Judge Robinson even suggested that I should have filed deficient pleadings to preserve my rights. Yet when I filed deficient pleadings, this court retaliated against me.

99)    I must now, once again, file pleadings that I know are deficient, but are none the less founded upon legitimate legal rights; including the rights to relief under Rule 60 and the rights to refile within six months when a petition is dismissed for reasons other than the merits of the case (K.S.A. 60-518)

100)    I promise the court I will continue to try to write sufficient pleadings; but we all know that with my disabilities I will almost certainly fail.

101)    But the likelyhood that a plaintiff will fail due to their disabilities is absolutely NOT an allowable justification for prejudicial dismissal of claims.

102)    And as I will explain more completely below, the Rehabilitation Act requires even Federal courts to make accommodations to the disabilities of litigants. And those accommodations are made available by the Congress via civil appointment of counsel under the ADA and 28 U.S.C. 1915; but this court refuses to accommodate my disabilities through either appointment of counsel or through liberal construction of the pleadings. There are no other reasonable accommodations available. Telling me how, or giving me a "road map" of how to write legal pleadings is not a reasonable accommodation whcn I am demonstrably physically and psychologically incapable of writing my pleadings to the standards of the court.

103)    And I guess I should add, psychological disabilities are REAL disabilities. You cannot just tell someone to stop being mentally ill, any more than you can tell someone to stop having Tarlov Cysts, or cancer, or herniated discs, or any other disabling condition. You cannot cure Tarlov Cyst by not believing in them. And you cannot cure mental illness by telling people to stop being mentally ill and try harder.

104)    .Even judges cannot cure mental illness by ordering it to not exist. Nor can they cure Tarlov Cysts by ordering them to stop pinching nerves. Nor can judges unilaterally declare that physical and mental health conditions do

22

not have incapacitating effects on their victims, based solely upon the 'evidence" that the victim can still type incoherently.

105)    I literally do not know what is in the pleadings and what is not, due to having to start and stop repeatedly and being stabbed in the genitals and rectum repeatedly in addition to the pinching of nerve roots in my spine. It is literally not possible for me to write my own pleadings.

106)    And over the course of ten years I consulted with literally hundreds of attorneys; none of whom said that I had no rights to relief; most of whom said that the cases were too complex; some of whom said there just wasn't enough money to be won, i.e. "We only take catastrophic cases." And some even warned me as early a November of 2012 that my life could be put in jeopardy if I exposed these standard crimes of The Hartford and their very non-standard application to the cases against OnForce and Berkshire Hathaway.

107)    So I cannot stress this point urgently enough: when I allege ongoing patterns of racketeering by The Hartford and Berkshire Hathaway and other workers compensation insurers; I am literally pleading what I was told by attorneys in addition to what I personally have witnessed and even recorded first hand.

108)    And it is the fact that I have audio and video recordings of many of

the events alleged in these claims that led directly to the conspiracies with

the judges and with my own attorney and opposing counsel in the workers

compensation case; and which ultimately led to the threats of murder that

were made against me on December 15th, 2015.

109)    I also have every letter, email, and voicemail messages in addition to

telephone conversations recorded which I am not able to physically

transcribe.

110)    And though I have tried to "slow down" and patiently write more

proper and complete pleadings, I'm sorry, I cannot.

111)    I try and I fail for the same reasons that I've tried and failed for almost

eleven years.

112)    But I have pleaded enough facts, and can support every fact with

substantial competent evidence, to demonstrate that my claims are just, even

though they are poorly written.

113)

114)        .

115)     All of the above named defendants are alleged to have participated in the cover up of the OnForce, Inc. workers compensation and insurance frauds beginning on March 9th, 2012 through the present time.

116)     Much of the factual background underlying these claims has been pleaded and is incorporated herein by reference in the related cases of :

   a.   Scott B. Sullivan v. WorkMarket, et. Al.

   b.   Scott B. Sullivan v. University of Kansas Hospital Authority, et. Al..

117)     Any additional details required or requested by the defendants will be provided promptly upon request, through amendments, affidavits, and discovery responses; and I will consent to extensions of time to file their answers to promote the efficient administration of justice.

118)     All of my disabilities, both physical and psychological, have been caused by the actions and inactions of these defendants in their perpetuation and cover up of the frauds and fraudulent enterprise between OnForce, The Hartford and Berkshire Hathaway.

119)     This enterprise includes The Hartford in their role as claims adjusters, Twin Cities Fire Insurance (A division of the Hartofd) in their role as purported underwriter and respondent in my workers compensation claim; and United States Liability Insurance (A Division of Berkshire Hathaway),

in their role in the creation of, operation of, marketing of, and cover up of the OnForce.com insurance frauds.

120)     In light of my extensive disabilities I consider it an inquiry reasonable under the circumstances that they would contact me with any questions or requests for documentation in advance of filing written responses or denials of fact. Denying factual allegations which are within their knowledge, or within their constructive knowledge, is alleged to be an ongoing practice of witness intimidation, obstruction of justice, and wire and mail fraud in which all of the defendants have been engaged consistently since before my injury and subsequently being forced into the workers compensation system for access to medical care.

121)     Denials made in bad faith or solely premised upon their perceived ability to exploit my disabilities to further delay justice and medical care are illegal, as well as deceptive and unconscionable acts and practices; prohibited by RICO, common law frauds, and the Kansas Consumer Protection Act; and actionable under other legal theories as well.

122)     Of the above named defendants:  The Hartford, Berkshire Hathaway, United States Liability Insurance, Wells Fargo, and "Several Unknown Employees" are known to have participated in the *original* creation of and subsequent breech of the contracts between OnForce and Scott B. Sullivan

for workers compensation, errors and omissions, and general liability insurance.

123)    All other defendants, as well as The Hartford, Berkshire Hathaway, USLE, Wells Fargo, and "Several unknown Employees" of the involved corporations are alleged to have participated in separate and severable claims subsequent to the original OnForce.com illegal insurance enterprise

124)    The violations and particularly the cover ups of the original and subsequent violations are ongoing, active and distinct violations.

125)    I have had several severe escalations to my spinal and other symptoms over during 2022. This includes not only increased levels of pain and incapacity; but also new symtoms never before experienced which are indicative of the ongoing and escalating nerve damage that I am suffering. This includes intermittent paralysis in my left foot, in addition to my right foot paralysis which has been occurring for years; my first episode of full below the waist paralysis for approximately 1 hour on April 1, 2022; increasing frequency, intensity and persistence of the "thunderclap headaches", dizziness, vomiting, nausea, and other symptoms consistent with cerebral spinal fluid leakage, CSF hypotension, and expanding Tarlov Cysts.

126)    And it is the nature of my original, still untreated spinal injury )the herniated discs which were first identified on April 3rd, 2012, and for which I was supposed to receive surgery in August of 2012 by recommendation of Dr. John Ciccarelli) and the complications arising from the formation of Tarlov Cysts that I have been experiencing incremental and potentially permanent nerve damage each and every day that my medical care is delayed.

127)    The longer that my access to *curative* medical care is delayed; the more likely the nerve damage will become more extensive, more crippling, more disabling and incapacitating, and the more likely that it will become permanent. As with other medical conditions, the prognosis for a cure is better when the conditions are treated early.

128)    I am in excess of 88% functionally impaired, as evaluated and confirmed by Dr. Estaban Azevedo in September and October of 2014.

129)    Doctor Azevedo was the first and ONLY doctor assigned by The Hartford to perform full functional impairment analysis according to AMA Guides.

130)    On July 14th, 2014, Dr. Edward Prostice was retained…according to my attorney Melinda Young…by The Hartford with the expectation that he

would perform full functional analysis as well as recommend and provide treatments options.

131)     But, upon my arrival to the appointment with Dr. Prostic, I was informed that he would not be performing full evaluations or treatment options because, in his own words, he was not being paid enough to do that. His belief about the intended scope of the appointment was that he would perform a records review and narrowly express an expert opinion on whether or not he believed that Dr. Ciccarelli's surgical recommendation would cure me.

132)     Notably, Dr. Prostic did not express any opinion on the extent of my disabilities; stating only that he believed a discectomy had only a 25% chance of curing my symptoms. While this could be interpreted in many ways; it is a confirmation of the reality of my symptoms and of the presence of the serverly herniated discs. In other words, he confirmed that I am not faking my injury or disabilities; believed that the herniated discs were probably only a partial cure; and refused to order or perform any further diagnostics or alternative recommendations; stating that he was explicitly instructed not to and offered only a portion of his normal fee for the visit.

133)     I was first evaluated for functional impairment by Dr. Estaban Azevedo of Advanced Physical Therapy two months later, on September 5th,

2014; and then given 12 PT sessions in six weeks followed by a final evaluation. Dr. Azevedo confirmed my extensive disabilities, including in excess of 80% functional impairment, and wrote that I may never be abnle to work again…even in sedentary work…because my symptoms were too severe, even from sitting upright and especially after walking under 100 feet.

134)     This was the only treatment that I ever received under workers compensation, subsequent to the two epidural steroid injections performed by Dr. Bruning in May of 2012.

135)     I cannot stress urgently enough how painful it is for me to sit up and type even for one full hour. And while I can push myself beyond my limits, and tolerate the extremes of pain for short periods of time; doing so causes such severe flare-ups that I will be almost completely bed-ridden for days after the type of "push" that I am forced to endure in the final days before deadlines expire.

136)     Perhaps more importantly though, or perhaps more objectively and scientifically, the herniated discs and Tarlov Cysts and other comorbid spinal pathologies that I suffer are literally classified as "medical emergency" because every trauma to my spinal nerve roots (including the trauma sustained from sitting upright and typing) does incremental and likely now permanent damage to the nerves of my spine.

137)    Recent clinical research has been published which confirms the
additional severity and critical nature of Tarlov Cysts when combined with
other pathologies such as nearby herniated discs, in what is described as
"double crush syndrome"; where the nerve roots of the caude equina are
being crushed at two distinct levels; such as the L5-S1 crushing from the
herniated discs plus the sacral nerve root crushing from the Tarlov Cysts.

138)    The presence and relevance of Tarlov Cysts was concealed from me
by all of my doctors prior to October of 2015. And after October of 2015, I
experienced an even greater level of abuse from most of my doctors; with
many of them explicitly denying that Tarlov Cysts ever cause symptoms.
This was thoroughly documented in my previous cases filed with the court
and incorporated herein by reference.

139)    After I was diagnosed with Tarlov Cysts, two months later on
December 15th, 2015 I was threatened with murder. That threat was
delivered by my wife, Michelle Safford, who claimed that she was taken,
shown photographs with which I would be blackmailed, and told to inform
me that I would be murdered, that my murder would be made to look like a
suicide; but that I would be allowed to "leave the state with as much as you
can carry" if I agreed to drop my pending legal claims involving OnForce,
The Hartford, Berkshire Hathaway, et. Al.

140)    I continued to seek medical care through various sources, including

AdventHealth Emergency Room visits in February and November of 2016

(Dr. Messerli and Dr. Schmidt). Dr. Messerli, in particular, contacted The

Hartford's attorney John M. Graham, Jr. to confirm my workers

compensation claim; and afterwards she never even returned to the

examination room; but sent two nurses with discharge instructions and a

Release for Work which I refused to sign. Never have I ever had an ER

physician ask me to sign a work release. And Dr. Messerli did not perform

any spinal examination or imaging whatsoever. My complaint that day was

from the dizziness, falling down, nausea and vomiting that I suffered as a

result of sitting up too long writing legal pleadings for a Berkshire Hathaway

inter-related case. Dr. Messerli only did a head CT; and then released me for

work without evaluating my spinal condition whatsoever. I have alleged this

was a malicious and conspiratorial act, intended to obstruct my access to

benefits through The Hartford and OnFOrce. And I note that at that point I

still had no explanation what Tarlov Cysts were; so I did not understand yet

the connection.

141)    I still had no explanation of Tarlov Cysts because of Dr. McCowen's

alleged participation in creating false medical records on January 19th,

2016…my first follow up with any doctor after finding out about the Tarlov

32

Cysts, and that being after the threat of murder and after Michelle had

abandoned our relationship. Dr. McCowen explicitly said "Scott, I'm not

going to look at your back" as he entered the room; performed no

examination, but created a medical record in which he accused me of

schizophrenia and possibly psychosis…diagnoses which I have never

received from any mental health professional, and which he made without

even a single mental health question being asked. This was alleged to be a

part of the conspiracy involving Michelle Safford, Diana Rutherford (my

mother) and then involving Dr. McCowen in their efforts to obstruct justice

and to obstruct me from getting medical care.

142)    And I've jumped a ahead quite a bit. After Dr. Azevedo rated me 88%

functionally impaired, and this being after my attorney, Melinda Young, had

withdrawn from my case under those suspicious circumstances; John M.

Graham, Jr. appointed himself as both my claims adjuster and as the

opposing counsel in the still pending workers compensation claim; and he

instructed me to be evaluated by Dr. David Clymer in November of 2014.

Dr. Clymer performed a very cursory examination, and specifically avoided

palpitating below the waist, and testing for sensitivity in the toes, or overall

functional impairment. The details of his examination were recorded, and

Michelle Safford was present as a witness and taking notes. Based upon this

cursory and allegedly deceptive examination, he rated me only 10% "body as a whole", but without an attached functional impairment rating.

143)     Anyone familiar with AMA ratings guides knows (which I did not know yet at the time) that "body as a whole" and "functional impairment" are two different things; each being only a portion of the evaluation required for a work comp disability rating. In short, a person can be 88% functionally impaired, even though their injury affects only 10% of the body as a whole.

144)     I continued to try to get attornets to represent me, which none would do after Melinda Young withdrew from my case, and particularly after Administrative Law Judge Kenneth Hursh had physically assaulted me.

145)     I also continued to try to get medical care; which included the October 2015 Er visit to Menorah at which the Tarlov Cysts were first revealed to me.

146)     And I apologize, I know I am rambling an disorganized. That is the effect of my disabilities.

147)     After I was told about the Tarlov Cysts, and after Dr. McCowen refused to examine me at all; I next went to APRN Carpenter at Dr. Clough's office, Neurosurgery of South Kansas City. I chose them because I was calling every neurosurgeon listed and they were the first to even acknowledge that they had heard of Tarlov Cysts. But in retrospect, I

phrased my question incorrectly: I asked, before setting an appointment if they were "familiar with" Tarlov Cyst Disease; because Ii did not know yet that there was actually a  controversy and wide-spread conspiracies among neurosurgeons and radiologists to not inform patients when we have Tarlov Cysts.

148)    APRN Carpenter ordered a new MRI and a EMG which confirmed the presence of the Tarlov Cysts and some nerve deficit at L5-S1. Again though they avoided testing at sacral dermatomes, just as Dr. Prostic had avoided testing sacral dermatomes. (I think I forgot to complete that part of the allegations against Dr. Prostic above).

149)    Then in May of 2016 when I called for my results from Neurosurgey of South KC. The nurse told me that they found nothing. But when I inquired specifically about the Tarlov Cysts, she said that yes, they did confirm those; and sort of in an "off-the-record" way told me that I should call Dr. Frank Feigenbaum in Dallas, TX.

150)    I attempted to get an evaluation from Dr. Feigenbaum, but he refused due to my open workers compensation claim.

151)    I contacted the Tarlov Cyst Disease Foundation, speaking directly with the President, Reta Honey-Heirs; and she referred me to Dr.

Feigenbaum and Dr. Rudolph Schrot in Sacramento, CA…who also refused to take me as a patient because of the open workers compensation claim.

152)    I returned to Neurosurgery of South KC in December of 2016 to try to order an updated MRI as my symptoms were still worsening; and this time APRN Carpenter wrote that no Tarlov Cysts were found; but ordered a new MRI from KU anyway.

153)    The new KU MRIs were performed in Feburary of 2017; and this time theu used the April 2014 MRIs as comparison studies, and wrote that the Tarlov Cysts had not changed; but confirmed they were present. This was the first time that I knew that KU knew that the cysts were on the April 2014 MRI and refused to tell me or to include them in any of their diagnoses.

154)    And I really can't even think let alone type, so I'm going to lay down again for an hour before trying again.

155)    X

156)    X

157)    X

158)    X


159)    This is why I suffer increasing loss of bowel and bladder control, and more frequent and longer lasting "flare-ups" of my genital and rectal and

abdominal pain, more severe longer lasting and more frequent episodes of

partial paralysis, and more intense, more frequent and longer lasting

"Thunderclap Heacaches" caused by intracranial cerebral spinal fluid

hypotension.

160)     In short, the delays that these defendants and those with whom they

have conspired and the obstruction of my medical care has now left me

likely permanently damaged and permanently physically maimed. It is of the

utmost importance that their crimes and frauds stop immediately before I

end up dead.

161)     In addition to stopping their ongoing crimes; it is necessary to stop the

dissemination of fraudulently created medical and mental health records

which are still being used against me to obstruct my access to medical care

through all sources.

162)     And it is necessary to replace all of those fraudulently created medical

records with the full truth about the last ten years of obstruction of my

medical care by these and other defendants.

163)     As the court is most assuredly aware, long delays in medical care are

used by health care providers and courts alike as a "flag" indicative of

…how to phrase this: Even in the case law that I have only recently read, it

is considered "evidence" that a person is faking their disabilities when they

do not go to the Emergency Room every single day. But if you go to the

Emergency Room every single day that you have these symptoms, that is

considered a red flag that you are opioid seeking and doctor shopping.

164)    The Hartford through their claims adjusters and their attorney John

M.Graham, Jr. directly provided false information to health care providers

on multiple occasions, including in emergency room settings, such as on

February 16th, 2016 to Dr. Messerli at Shawnee Mission Medical Center.

165)    Additionally, on multiple occasions I tried to use my $500 "non-

authorized" stipend to get second opinions and consultations with surgeons

at The University of Kansas Medical Center and AdventHealth and their

affiliated spinal surgeons at Neurosurgery Associates; only to have The

Hartford first confirm to me that the $500 was still available and had not

been used; then to have them refuse to pay surgeons with whom I consulted.

166)    Additionally, during July of 2014 and November of 2014 when The

Hartford chose two surgeons of their own to perform examinations and

evaluations (Dr. David Clymer and Dr. Edward Prostic, respectively); the

Hartford then refused to pay their own chosen doctors, and both of them sent

me the bills for their services. The Hartford was not even paying their own

doctors; and would not release the $500 non-authorized funds to any of my

doctors; thus resulting in unpaid medical bills and animosity between my chosen doctors and even between their chosen doctors and me.

167)     From the very beginning The Hartford and their chosen doctors were withholding diagnostic information from me; beginningwith Dr. Tegumsen Wakwaya withholding the extent of the damage to my spine until after I received an MRI on April 3rd, 2012; and then with all of my doctors withholding the diagnosis of Tarlov Cyst Disease, though the cysts were visible on imaging as far back as April of 2012.

168)     By the time that I found out that I had the cysts; I was already "blacklisted" by AdventHealth, The University of Kansas Medical Center, and HCA primary care physicians both for non-payment and for the fraudulently created belief that I was an opioid seekr, a fraud, or mentally ill; with no physical damage to my spine.

169)     I was originally given work restrictions which OnForce could not and would not accommodate in February 14th, 2012 by Dr. Tegumsen Wakwaya of Concentra (selected hcp of The Hartford).

170)     Dr. Wakwaya withheld diagnostic information from the first set of x-rays taken on February 14th, 2012; and then participated along with Laduska Anne Haney – my claims adjuster at The Hartford – in the first instance of what I have termed "staged non-compliance" by instructing me to follow up

with my primary care physician (Dr. Stephen Nolker of St. Luke's Primary); but including in the written report that I was to follow up with Dr. Wakwaya in seven days on February 21st, 2012.

171)     Concentra and Dr. Wakwaya refused to see me for a follow up; claiming that I was only approved for a single visit; and then The Hartford via Laduska Anne Haney threatened to close my claim for non compliance for not following up with Dr. Wakwaya.

172)     The second instance of staged non-compliance involved Dr. John Ciccarelli in August of 2012. Dr. Ciccarelli had been selected by The Hartford after my first MRI on April 3rd, 2012 showed herniated discs. He ordered two rounds of epidural injections which were done in May; and by July my condition had worsened to the point that on July 31st, 2012, Dr. Ciccarelli requested surgery approval.

173)     On August 15th, and August 22nd, 2012, The Hartford Laduska Anne Haney mailed two denial letters denying Dr. Ciccarelli's request for surgery, then on August 29th, 2012, Dr. Ciccarelli wrote a letter to The Hartford claiming that I had failed to show up for my pre-surgery labs, that he considered me "non-compliant", and that my case should be closed. He further refused to see me again after my case was eventually reopened

subsequent to an attorney (Michael Downing) contacting the Hartford on my behalf.

174)    In December and January of 2012-2013 I sought consultations from Dr. Stephen Hess of Neurosurgeay Associates; who recommended a different surgery from Dr. Ciccarelli. But The Hartford refused to pay Dr. Hess out of the non-authorized stipend mandated by Kansas law, and Dr. Hess refused further services.

175)    As a result of the non-payment to Dr. Hess and AdventHealth (Shawnee Mission Medical Center) physicians and ERs; I was blacklisted by AdventHealth, who to this day will not accept me as a new patient for primary or neurosurgical care.

176)    Similarly, I went to great lengths to prearrange with Laduska Haney for the $500 to be paid to The University of Kansas Hospital, and worked with KU's work comp liason's office to select a physician – Dr. Larry Cordell – to perform evaluations; but The Hartford refused to pay the $500; and later ( in January of 2016) confirmed this $500 still available for use. I was subsequently blacklisted by The University of Kansas Health Systems, and can no longer be seen for primary care or spine center consultations.

177)    My disabilities, and the causes of my disabilities (herniated discs and Tarlov Cysts, in addition to my escalating mental illness) have been

documented and increasing ever since the Hartford and their alleged

coconspirators began their interference with my medical care and workers

compensation claims.

178)    The Hartford claims adjusters appeared to be unaware of the nature of

my employment with OnForce until March 9th, 2012 when I spoke with

Carol Morris of The Hartford personally due to my dissatisfaction with how

my care was being handled by Laduska Haney and Dr. Wakwaya.

179)    At that time I informed Ms. Morris that I was an independent

contractor and that OnForce was charging fees to ICs such as myself

nationwide for coverage under their corporate workers compensation

insurance.

180)    Ms. Morris responded that they were not allowed to do that; and that

she had never heard anything like that before; and that she would look into

it.

181)    But Ms. Morris did not, nor did Laduska Haney, ever stop exercising

complete control over my medical care; and preventing me from using my

private insurance to seek care through my own selected physicians.

182)    Mike Fiske was designated as my contact at OnForce in February of

2012, and he too seemed unaware of how OnForce was supposed to handle

claims under this new "policy" of workers compensation benefits. He

described it as "a different kind of policy" and deferred all medical care and

benefits decisions to The Hartford, while simultaneously refusing to assign

any light or sedentary work opportunities while I was under Dr. Wakwaya or

Dr. Ciccarelli's care.

183)     Dr. Stephen Nolker, my primary care physician, attempted to get me

approved for care until the day that my MRIs were forwarded to his office

for review. At that point, I was cut off from care by St. Luke's South

Primary and told to…make that yelled at to "GO CALL WORK COMP."

184)     At all times prior to October 15th, 2015 all of my health care providers

withheld from me the fact that I had formed Tarlov Cysts directly below the

site of my injury.

185)     And two months to the day after I was diagnosed with Tarlov Cysts, I

was told by my wife, Michelle Safford that … and as you will understand, I

still cannot fully complete this sentence without fear…that I would be

murdered and "they will make it look like a suicide" if I did not drop all of

my pending claims against OnForce, The Hartford, and Berkshire Hathaway.

186)     I have tried, literally for years, to write and file the complete details of

these claims. And not only does sitting up and typing for this long cause

extreme flare-ups of my physical pain; but the fear of retaliation, particularly

after I was threatened with murder, literally paralyzes me from writing and

filing the full details of those threats.

187)     The threats to murder me as communicated to me by Ms. Safford

were very specific as to how I would be murdered, how my murder would be

concealed, where the threats were communicated to her and under what

circumstances; and the where and the circumstances would reveal the

identities of the people who directly threatened me and would, I believe, put

my life in imminent danger.

188)     I have discussed this with mental health experts, and literally every

one of them believes me. Not once have I ever been diagnosed with

schizophrenia, psychosis, somatic symptoms disorder, hypochondira or any

of the other false mental health diagnoses that have been used as strategies to

defraud the court and defame me as a witness and victim of these crimes.

189)     And at this very moment, I have been trying since literally 2:00 a.m.;

and the combination of my physical disabilities, my mental disabilities, and

the …I will just call it the entropy of everything around me that has

degenerated into barely functional status: i.e. my computer, my truck, my

plumbing, my appliances.

190)     I spend about 20 hours every day laying down, most of that in the

fetal position, having extreme and completely debilitating flare ups of my

44

symptoms. The remaining 4 hours is split between trying to write legal pleadings, cooking, going to the bathroom, and repairing the things that are breaking all around me.

191)     My life has become literally unbearable, to the point that I have been monitored weekly by Johnson County Mental Health for the past three months; including weekly welfare checkups by telephone and in person visits with police escort when I don't answer or call them back soon enough.

192)     I have had suicidal thoughts since early in 2014; and experienced compulsive suicidal thoughts in August of 2016 that prompted me to seek emergency intervention with my counselor at church Elder Doug Ludwig.

193)     The previously pleaded retaliation at my church escalated to the point that on October 28th, 2018…ten days before I filed my first pleadings…Elder Ludwig literally suggested that I should consider suicide; because my pain and disability were well known to him, as were all of the facts of these cases; and it was his express opinion that "there are too many evil people in the world" that would prevent me from every getting medical care or justice. It was Elder Ludwig's suggestion that I commit suicide…witnessed by multiple people at the New Haven Seventh-Day Adventist Church…that was my final attempt to resolve the obstruction of my medical care without litigation.

45

194)    Subsequent to the filing of my original claims and the appellate practice involved, I have attempted to get care through AdventHealth and The University of Kansas in cooperation with Health Partnerships and Johnson County Mental Health; each time resulting in increasing abuse, neglect and retaliation.

195)    I am seeking relief under the Racketeering Influenced Corrupt Organizations Act for the acts of wire and mail fraud, witness intimidation, and obstruction of justice as predicate acts committed by these defendants and by those with whom they have conspired to conceal OnForce's frauds and to obstruct my access to justice and medical care.

196)    I am seeking relief under the Civil Rights Acts both for the obstruction of justice and for the targeting of my most fundamental civil rights; including my right to autonomy and control over my own body and health care, and interference with my rights to enter into and enforce contracts with health care providers of my choosing, and ultimately by leaving me fully disabled and unemployable, interfering with my rights and ability to enter into contracts for employement, health insurance, and to enforce contracts for workers compensation benefits, and to receive disability benefits.

197)    Between April of 2014 through August 13th 2014 and throughout

2015, my attorney, Melinda Young, conspired with opposing counsel John

M. Graham, Jr., Administrative Law Judge Kenneth Hursh, her attorney

Time Elliot, The Hartford, OnForce, and Peter Cannone and Adecco to 1)

conceal the pending sale of OnForce to Adecco, and 2) to retaliate against

me through witness intimidation, wire and mail fraud, eliciting false medical

records, and 3) to obstruction of justice with respect both to my pending

workers compensation claim and to the allegations of fraud and racketeering

against OnForce, The Hartford, and Berkshire Hathaway, et. Al.

198)    This includes, without limitation, their participation, directly or

indirectly in the threats to murder me from December 15th, 2015…those

threats being still active and ongoing.

199)    No one has ever repealed the threat to murder me, nor in any way to

settle these claims without litigation.

200)    Everyone involved continues to publish, support, and defend the false

medical records, court records, and other defamatory statements made

against me for the express purpose of preventing litigation or law

enforcement of all of these claims (including the claims in the inter-related

cases noted by the court.)

201)    Those false records, and particularly the false and fraudulently written

court records (because they are publicly available) continue to do me harm

to my reputation and to my ability to get medical care.

202)    This fact is especially true where the court treats denials of fact and

allegations made by attorneys with no knowledge or information as if they

are evidence or testimony.

203)    For example, when opposing attorneys argue that the fact that I can

type proves that I am not disabled or incapacitated; it is treated as if it is

their expert testimony that I am not disabled or incapacitated. This ignores

not only the fact that they are not medical experts, but also the fact that they

have never met me, never spoken to me, and never performed a Rule 11

required "inquiry reasonable under the circumstances" to verify if their

denials, allegations or assertions are even true.

204)    Additionally, everyone ignores the fact that typing causes me to

experience intense stabbing pains to the genitals and rectum, leg spasms,

foot paralysis, thunderclap headaches, and loss of bowel and bladder control,

in addition to unbearable pain and compulsive suicidal thoughts. I am

neither employable nor capable of defending my rights in a court of law

merely because I can type. The fact that what I type is so woefully deficient

and full of evidence that my pain and disabilities are real is actually more

admissible as evidence; because I am the only one here experiencing the crippling effects of physical and psychological disability caused by typing.

205)     In the interim between my two appointments with Dr. Hylton, my attorney in my workers compensation claim , Melinda Young, would finally speak with me on May 7th, 2014 -- (she had never personally spoken with me after taking my case on December of 2013) and would ask me a series of questions which seemed to indicate that she had only then become aware of the nature of the OnForce insurance practices. We would speak again on May 27th, 2014, and after asking me again for more details on OnForce's practices, she asked if I would release her from her obligation to represent me. I explained that I still needed a lawyer, particularly in light of the fact that she had filed my case in the Kansas Department of Labor's workers compensation system; rather than as an insurance fraud case as I had originally asked.

206)     Ms. Young informed me that she was able to get me approved for an examination with Dr. Clymer of Carondolet for July 14th, 2014. At the conclusion of my examination with Dr. Clymer (which will be detailed elsewhere to further document the pattern of negligent and intentionally erroneous diagnoses which I am alleging) Ms. Young filed a Motion to Withdraw from my case with the court. I received an email notifying me of

49

her Motion to Withdraw less than two hours after the conclusion of my

examination with Dr. Clymer.

207)     Ms. Young would later continue the Motion's hearing until August

13th, 2014 and on August 11th, 2014, OnForce was sold to Adecco in a

transaction that occurred in Switzerland at approximately 3:30 am, local

time. At 4:20 am, Ms. Young would fax a Motion for Preliminary Hearing to

Administrative Law Judge Kenneth Hursh.

208)     Neither ALJ Hursh nor my attorney notified me of the Motion for a

Preliminary hearing to be held two days later, on August 13th, 2014. Ms.

Young did not appear at the hearing, or submit an affidavit in support of her

Motion to Dismiss; instead hiring an insurance subrogation specialist named

Tim Elliot to represent her; and who also claimed that he would act as my

attorney for the day if Ms. Young's Motion was denied. When asked if that

would be a conflict of interest in light of his normal practice as a subrogation

specialist representing insurance companies; he stated the he did not

represent any of the involved insurers; and therefore no conflict of interest

would exist. When asked if he had ever represented a workers' compensation

claimant, he said that he had, but he could not remember when.

209)     ALJ Hursh conducted the hearing on the Motion to Withdraw, and

granted me exactly two words of oral argument before ruling in Ms. Young's

favor. He then waited until after this ruling in which he released Ms. Young

from her obligation to represent me, and after her attorney had left the court

to inform me that he was going to perform the Preliminary hearing on my

workers compensation claim. When I said that I had not received a notice

that there would be a preliminary hearing that day, Judge Hursh responded,

"Here" and tossed his copy of the Motion on the counsel table in front of me.

It included no requests for benefits, and had no medical records or any other

documentation attached.

210)    I requested appointment of counsel which was denied. And requested

a continuance, which he eventually granted. After which opposing counsel,

John M. Graham, Jr. said that OnForce and The Hartford had agreed to give

me 12 sessions of physical therapy

211)    I asked ALJ Hursh what was his responsibility if I reported fraud, and

I informed Judge Hursh of my belief that there was no workers

compensation insurance which covered me, at which point John Graham Jr.

Stated that there was insurance in effect;  I again asked Judge Hurst to take a

fraud report; was ejected from the hearing room.

212)    I will provide further details and a transcript in a supplementary

affidavit; as this is a key element to the allegations of harm, injury, and

damages against the University of Kansas for not diagnosing my Tarlov Cyst

Disease at that time; as well as an underlying reason for my constitutional argument that a citizen has a right to a Federal trial on disputes against their home state where there is sufficient evidence of a conflict of interest whereby the State has engaged in multiple conspiracies by and through state officials, including judges, and can be reasonably presumed to lack the impartiality to offer a fair trial to a particular individual.

213)    And this leads to a fact for which no one will grant me an honest presumption of truth: but which is a basis to much of the State sponsored abuse and harassment and the alleged threats made against me. After I was ejected from the courtroom, I left the Department of Labor Workers Compensation Division offices, into the hallway of the public office building which housed the offices; and I waited while Michelle gathered my things.

214)    Judge Hursh and opposing counsel John Graham Jr. stood in the doorway smiling at me, mockingly, and I began to pray. I could hear Michelle crying in the background, and the combination of my attorney withdrawing, OnForce being sold, and the preliminary hearing being called to order without any notice had convinced us both that there was essentially no hope that I would ever get medical care. The workers compensation system and insurance commission were simply too corrupt.

215)    As Judge Hursh laughed at my prayer and John Graham smiled in the background, I began to recite the story of The Good Samaritan. This angered Judge Hursh, and when Michelle had gotten my things gathered, Judge Hursh ordered me to get on the elevator and leave. (The Work Comp Offices were on the second floor) As the elevator doors closed, I saw Judge Hursh running toward the stairs to race downstairs ahead of us. He went ahead of us, and waited just outside, holding the door, and just as I rolled past him in my wheelchair, he kicked me, then ran rapidly back into the building.

216)    I called out that what he had done was assault, and he turned around, and came back outside, phone in hand, calling 911. A police report was filed, and I asked the police and the Lenexa, KS city prosecutor to file an assault charge; which they refused to do. Subsequent to that incident, I was unable to obtain replacement counsel; and many of the attorneys with whom I spoke said that they could not represent me after the assault allegation against Judge Hursh; one specifically commenting "We need these judges."

217)    The Motion for Preliminary hearing was faxed to the court on August 11th, 2014 at 4:20 a.m., approximately 30 minutes after Adecco purchased OnForce in a sale that had been rescheduled and moved to Geneva, Switzerland.

218)    Only Peter Cannone (among the defendants) would have had knowledge of the impending sale of OnForce to Adecco, and it is alleged that based upon this knowledge he, John M. Graham, Jr. and Melinda Young conspired to delay my workers compensation claim; to schedule a fraudulent medical examination with Dr. David Clymer, and for Ms. Young to withdraw from my case immediately after the sale to Adecco completed.

219)    Because the sale was delayed, the hearing on Ms. Young's Motion to withdraw had to be rescheduled until August 13th, 2014.

220)    As soon as...and I mean literally the moment that Ms. Young received notice that the sale to Adecco had completed...she faxed a Motion for Preliminary Hearing to Judge Kenneth Hursh. She did not inform me that the Preliminary Hearing would be held by surprise immediately after her Motion to Withdraw was granted. And she did not request any medical care or benefits, or attach any medical records to the Motion for Preliminary Hearing.

221)    Her and Mr. Graham and Judge Hursh's goal in other words was to render me a pro se litigant; and immediately conduct the preliminary hearing without giving me any notice that it was going to take place; and without any medical records or requests for benefits. Had the hearing been conducted, it is presumed the ruling of law issued by Judge Hursh...intended

to be issued by Judge Hursh on August 13th, 2014…would have been that "I" did not request any benefits in my Motion for Preliminary hearing (again…that my attorney filed AFTER she had already moved to withdraw, without giving me notice, and after OnForce had just been sold); and therefore my case would be closed.

222)    After I was diagnosed with Tarlov Cysts, I emailed John M. Graham, Jr. requesting additional evaluation and treatment, and he declined. I then sent a Notice of Intent in February of 2016 demanding treatment and informing them that under the Workers Compensation Act they would be liable for payment of any and all medical bills incurred while they were denying medical care and even evaluations.

223)    Therefore, by law, The Hartford and OnForce, as respondents, are liable for all medical care and diagnoses for my spinal injuries from Decebmer of 2015 through the present.

224)    Additionally, whatever the contract with OnForce and The Hartford may be interpreted to be; it was presented as "workers compensation" and it entitles me to the same benefis as workers compensation; even if it is a non-technically-workers-compensation private contract.

225)    Under the workers compensation act, and contrary to the interpretation made by Judge Angel Mitchell, the employer and insurer are

required to provide medical care until the worker reaches Maximum Medical

Improvement as adjudged by a court of law. Even if a settlement is reached,

unless the settlement explicitly waives all rights to future medical care; then

future escalations and symptoms arising out of the original injury, including

future iagtrogenic harms or harms caused by failure to properly diagnose and

treat the injury, are compensable unless and until future medical is waived

explicitly.

226)    This is necessary because, especially with spinal injuries, it is not

possible to know that the treatment given will be sufficient if new

pathologies are discovered, or, for example, as commonly happens, if a

fusion surgery screws come loose and additional surgery is required.

227)    In other words, workers compensation inherently is open ended as to

its expiration of rights to relief until the worker is adjudged to be at

Maximum Medical Improvement AND waives future medical benefits.

228)    The entire contract for workers compensation benefits between myself

and OnForce is what is included in the insurance FAQs and website

descriptions of the insurance enterprise between OnForce, The Hartford and

USLI (Berkshire Hathaway); and also is open ended; providing no

expiration on future medical needs.

229)    But my ability to seek relief through the court has been actively

obstructed by the health care professionals; both as a part of their opposition

to workers compensation and disability benefits; and as a part of their

conspiracies and enterprises to cover up Tarlov Cyst Disease as a whole.

230)    And The Hartford, OnForce, and Berkshire Hathaway conspired

directly with health care providers to obstruct me from getting the medical

evidence and treatments necessary to seek medical expenses and disability

and off-work benefits through adjudication…either in the Kansas

Department of Labor's Workers Compensation Division or through District

Courts.

231)    And if the rulings that workers compensation is an exclusive remedy,

even where no evidence of an actual workers compensation insurance policy

or an actual compensable employment arrangement exists or is still being

actively concealed by the defendants; the liability to pay medical, damages,

and lost wages and disability benefits would fall to the State of Kansas itself

once OnForce was sold if successor liability did not apply as a continuing

enterprise.

232)    This explains why the State of Kansas was unwilling and the

Department of Labor and Kansas Insurance Commission actually conspired

to cover up the frauds committed by OnForce, The Hartford, and Berkshire

Hathaway. It was in the interests of Kansas to keep me in the workers

compensation system under OnForce, The Hartford, and their attorneys'

fraudulent practices where they too could join in the false allegations of non-

compliance and affirm the fraudulently created medical records of Dr.

Ciccarelli, Dr. Prostic, and Dr. Clymet while dismissing the accurate

disability evaluation made by Dr. Azevedo…the only doctor to even do a

functional examination compliant with the AMA guides.

233)    And by crippling me, tormenting me, and ultimately threatening me

with murder and removing ALL of my social support from my wife, my

family and even my church; they have intentionally caused and insured that I

will not only become increasingly physically disabled, but psychologically

traumatized as well.

234)    I reported my first suicidal thoughts to Dr. Clymer on July 14th, 2014;

and his response was literally nothing.

235)    Those suicidal thoughts became compulsive suicidal thoughts in

August of 2016, at which time I sought care through Mercy and Truth (who

literally acted like I had said nothing) and then through Doug Ludwig at the

New Haven Seventh-Day Adventist Church.

236)    I continue to consult with Johnson County Mental Health and report

my suicidal ideations to all medical professionals; with many of them, like

Megan Caldwell at The University of Kansas and Dr. Mabry at KU respond with anger and retaliation in March of 2022.

237)    And my suicidal ideations are the most severe when trying to write legal pleadings; because not only the pain, but also the complexity of the isses and the long-term evidence of attorneys' and judges' retaliation making the process both physically and psychologically traumatic, as well as com0pletely hopeless, because I will never get better and never be better able to litigate my rights without first getting the medical care that I need.

238)    And to be clear, my mental health professinonals who have evaluated me recognize that my suicidal thoughts and major depressive disorder generally are caused by the unique litigation environment and the fact of my near comlete disability.

239)    My disabilities could have been curd in a single afternoon; and possibly still could be cured in a single afternoon.

240)    But because I ws injured at work and because I suffered a spinal injury, I have faced relentless abuse discriminatin, prejudice and accusations for ten years and ongoing.

241)    People would literally rather see me dead than see me receive workers compensatin benefits or succedd at enforceiing my rights through litigation.

242)    And this is what gives rise to the obstruction of justice claims under RICO and the disputed applicability of the Civil Rights Acts sections 1981 through 1988. All of these are attacks against my civil rights specifically. And these are politically motivated attacks by people who universally consider workers compensation nearly synonymous with socialism (even though it is always private insurance conracts under Kansas law..except, as noted, when the company goes out of business or never purchased insurance and the Kansas fund takes over the financial iability.)

243)    Any technical omission from my pleadings are either inferred from the facts that are included, or are documentable with evidence affidavits and testimony which would undeniably overcome summary judgment motions.

244)    It is only my disabilities themselves which prevent me from writing proper pleadings motions and briefs.

245)    The facts of the cases would not lead to dismissal; even of the ADA claims, as with Tarlov Cyst Disease it truly is the exception stated in Johnson by Johnson v.Thompson where everyone with the same disease faces the same discrimination.

246)    Statutes of limitations defenses should be subject to equitable estoppel due to the ongoing concealment of both the legal contracts and the medical truth with the fraudulent intent of obstructing justice; as well as statutory and

equitable tolling due to my incapacity and due to the fact that all of my disabilities were and are being inflicted uon me by the defendants specifrically to render me incapable of defending my rights.

247)    Expert testimony including depositions of the cotors whose lawyers claim that they will testify against me, depositions of every doctor who created medical records fraudulently denying my disabilities and their causes, and even lay testimony and mental health testimony must be allowed before tolling and estoppel defenses could be rejected. They cannot be rejected as a matter of law; but must be resolved as the basis of the facts.

248)    Any judgments received solely on the basis of my inability to write legalpleadings motions and briefs will not resolve the disputes or constitute res judicatat; and the defendants were always aware of this when they chose these legal strategies of facial attacks on the pleadings and against my physical and psychological disabilities.

249)    The injury occurred in Kansas, at Talbots in Overland Park KS; while I was under a contract with Agilisys, said contract facilitated through OnForce.com.

250)    OnFOrce is not a contractor of onsite services, but rather is a software as a service company which charges fees for the use of their software to contractors such as Agilisys and to subcontractors such as myself.

251)    My relationship with OnForce was as a consumer of software as a service; and their relationship was a supplier of software, thus subjecting them to the Kansas Consumer Protection Act and constituting interstate wire fraud.

252)    The Hartford was a part of the enterprise with OnForce specific to the insurance offerings, which are distinct from the software as a service. SO was Berkshire Hathaway.

253)    The Hartford also conspired in all acts of witness intimidation and obstruction of justice through their claims adjusters and attorneys and through their conspiracy with the Department of Labor and specifically with Judge Kenneth Hursh and Jerry Shelor.

254)    The conspiratorial acts of Judges Hursh and Shelor are alleged to have been outside of and beyond the scope of judicial tasks; most especially Judge Hursh's physical assault on August 13th, 2014 and his conspiracy to cover up the sale of OnForce to Adecco and the underlying frauds. This is demonstrated by Judge Hursh's refusal to even hear the allegations of fraud, explicitly stated when I tried to raise them on August 13th, 2014. That was his judicial function, which he refused to perform; because he was directly involved in the non-judicial functions of the conspiracy and cover up.

255)    Judge Shelor and the Kansas Department of Labor and Insurance

Commission were aware of the facts, and conspired to obstruct justice and to

fail to prevent the violations of my civil rights. (section 1986).

256)    My intelligence and knowledge cannot overcome the material fact of

the cysts and herniated discs in my spine, the CSF leakage and hypotension,

or the effects of the intentional infliction of mental anguish and emotional

distress.

257)    I was preliminarily evaluated for a form of PTSD called  "Litigation

Abuse Syndrome" by Dr. Karen Huffer before her death; but we were never

able to get the money for complete evaluation and expert testimony.

258)    I was diagnosed by Johnson County Mental Health with Obsessive

Compulsive Personality Disorder including crippling "perfectionism", high

anxiety discored and "rigid thinking" in March of 2012.

259)    I have never been diagnosed with any form of delusional mental

illness, such as schizophrenia, psychosis, or somatic symptom disorders;

most particularly because all of my mental health professionals know that

my disabilities and the facts that I've alleged are true.

260)    Neither my physical nor mental disabilities will ever improve if I am

persistently subjected to litigation abuse, fraud, threats, and fraud upon the

court by opposing counsel and parties and never allowed to get the physical

medical care that I need.

261)    I think I omitted above that when I went to Johnson County Imaging

in August of 2016 to get a new copy of my MRI CDs (all of mine went

missing when Michelle left…mysteriously) and to ask for a reread and to

have them report all Tarlov Cysts found; they told me that my MRI images

were "purged" from the system, and they were perplexed because that had

never happened before. It is technically impossible fo that to happen by

accident due to their redundant data systems; so the images must have been

manually deleted after the Tarlov Cysts were reported and I asked for a

reread.


COUNT I – ALLEGING RICO VIOLATIONS AGAINST THE HARTFORD

FINANCIAL SERVICES GROUP, INC., Laduska Anne Haney (The

Hartford), Carol Morris (The Hartford), Zeke Delgado(The Hartford), Mike

Fiske, (OnForce),  Twin Cities Fire Insurance Company (A Division of The

Hartford), Berkshire Hathaway, United States Liability (A Division of

Berkshire Hathaway), Nebraska Furniture Mart (A Division of Berkshire

Hathaway),  Judge Paul Gurney (Johnson County, KS District Court), Former

Chief Justice Lawton Nuss (Kansas Supreme Court), Former Departmental

Justice Lee Johnson (Kansas Supreme Court), Chief Judge Kevin Moriarty

(Johnson County, KS District Court),  and all named defendants

Concentra

Dr. Tegumsen Wakwaya

Premier Spine Care

Dr. John Ciccarelli

PA Amy Slesky

St. Luke's South Primary Care

Dr. Stephen Nolker

**Defendants Added:**

Dr. David Cymer

Dr. Edward Prostic

Johnson Count Imaging

John M. Graham, Jr.

The Steven G. Piland Law Firm

Steven G. Piland

Melinda Young

Matthew Bretz

The Law Firm of Bretz & Young

Tim Elliot

The Time Elliot Law Firm

Administrative Law Judge Kenneth Hursh

Special Administrative Law Judge Jerry Shelor

Greg Goheen

Darryl Wynn

Jodi Fox

Other unknown persons

The Law Firm of McAnany, Van Cleave and Phillips

262)    Beginning in January of 2012, when I first reported my injury to
OnForce, and continuing through the present time; all of the named
defendants participated in conspiracies to engage in witness intimidation,
obstruction of justice, wire and mail fraud, and other crimes and civil

wrongs with the intention of preventing me from getting medical care and

benefits under the OnForce.com contracts alleged and incorporated herein.

263)     These conspiracies escalated continually to the point of December

15th, 2015 when Michelle Safford filed my Motion for Change of Judge in

the case of Nebraska Furniture Mart v. Scott B. Sullivan (Johnson County

KS District Court case 13CV 03089.

264)     When Michelle returned from work that evening, she claimed that she

had been taken "behind the swinging doors" of the Kansas Justice Center,

into chambers of a Kansas Supreme Court Justice whom she refused to

identify by name, where she was shown photographs "including Polaroids"

with which I was to be blackmailed if I did not drop my pending claims

against OnForce, The Hartford, and Nebraska Furniture Mart.

265)     Nebraska Furniture Mart became involved through a $1300 debt

collection that resulted from my loss of employment and OnForce/The

Hartford's refusal to pay off work benefits.

266)     NFM used the debt collection as a means to attempt to extort a

"Global Settlement Release" that would indemnify all divisions of Berkshire

Hathaway for all pending and future claims.

267)     This demand for settlement was reviewed by my attorney, Melinda

Young of the Law Firm of Bretz & Young, who instructed me not to accept

Nebraska Furniture Mart's demands or else "she won't be able to get you medical care." This is how it was expressed to me verbatim by her assistant, Melissa Bush.

268)    After reviewing the settlement demands, and after receiving discovery responses from OnForce and The Hartford in my workers compensation claim; Ms. Young was aware (even though I had told them before they agreed to take my case) that there was in fact a legal connection between Berkshire Hathaway and OnForce and The Hartford; and this was the foundation of her instruction that I not accept NFM's settlement demands.

269)    The further details of the events which linked Nebraska Furniture Mart and Berkshire Hathaway are pleaded elsewhere and incorporated herein by reference.

270)    The health care providers named herein are those who were chosen by The Hartford in their claims adjusting process. These are the health care providers who initially concealed the herniated discs until April 4th, 2012; and who always concealed the Tarlov Cysts through November of 2014; which was the last doctors' appointment that The Hartford would allow.

271)    My cysts were not revealed to me until October 15th, 2015 when I went to the ER at Menorah Medical Center.

272)    After the revelation of the Tarlov Cysts, I requested additional

medical care via email to Attorney john M. Graham, Jr. who had at that

point also appointed himself as my case manager; and he would not approve

even an examination under the OnForce contract to evaluate the Tarlov

Cysts and my escalating disabilities. These emails occurred in early

December, 2015; immediately before the threat of murder was made.

273)    During this same time period, I was still defending myself against

NFM's $1300 debt collection; in which they had run up over $70,000 in

legal fees which they were threatening to impose as  a lien against my home.

They refused all offers of settlement and were demanding the return of

Christmas gifts that I had purchased in ecember of 2011, immediately before

I was injured. As these were Christmas gifts, they were no longer my

property; and I literally could not return them; but I did offer payment if full;

which was denied by NFM attorney Jo Ann Butaud (who also need to be

listed as a defendant, along with the law firm of Evans and Mullinix and

attorney Steve N. Gatzoulis for NFM)

274)    Attorney Merle Parks of Evans and Mullinix also contacted me via

email in December of 2015, demanding that I sign the Global Settlement

Release. I requested that he enter an entry of appearance and document that

he was authorized to negotiate on behalf of Berkshire Hathaway in addition to NFM, and he immediately refused and cut off settlement discussion.

275)    It was within the next week that I filed the Motion for Change of Judge, which Michelle delivered; and then she was taken to Topeka, KS, into chambers of a justice of the Kansas Supreme Court; and then returned home with the demand that I drop all of my claims.

276)    Explicitly a part of this threat was that my murder would be made to look like a suicide; but that they "will let you leave the state with as much as you can carry."

277)    Two weeks after this threat was made, having determined that I could not survive as a homeless man if I were to drop all of my claims, abandon my home, and "leave the state with as much as you can carry", Michelle Safford decided to leave me.

278)    However, contrary to the statements made by Ms. Safford's mother, Janet Gereau, at no point did I ever threaten Michelle; nor at any point was Michelle ever afraid of me in any way for any reason. Immediately before her departure and after she left when she returned to the home on multiple occasion to pick up personal belongings, I made multiple audio and video recordings which clearly prove that Janet Gereau's statements to this court were false and malicious; and made in retaliation for my insistence that

Michelle and Jonathan pay for the damages that they had done to the home immediately before their departure. (Which are also documented with photos and video recordings.)

279)     This includes a telephone conversation in which Ms. Gereau explicitly threatened to "make this VEEEERY UGLY", and Michelle admitted that she had promised to pay the damages before she left; but that after she left, her mother would not allow her to offer me any assistance, including with restoring disconnected utilities, repairing the damage, or cleaning up the literally three foot high piles of trash and garbage which she and her son Jonathan Alan Keck II had accumulated in the garage, and basement and in the bedrooms throughout the house.

280)     This accumulation of garbage in fact was explicitly used by Ms. Gereau in her threats to have my home condemned and to get the police involved if I would not return Ms Safford and Mr. Keck's belongings and surrender all my rights to relief for the damages they had done.

281)     My series of recordings also include all of the Hartford's chosen physicians after March 28th, 2012 when Dr. Wakwaya had physically threatened me and while he was still concealing the herniated discs; but before I got my first MRI; plus the visit on April 4th, 2012 when Dr.

Wakwaya apologized for concealing the herniated discs and explained "I can only do what the insurance company tells me to do."

282)     My further recordings include Dr. John Ciccarelli, recommending surgery on July 31st, 2012; and my conversations with is PA Amy Slesky when the surgery was denied on August 15th, through August 21st. These recordings plus their written communications prove their engagement in what I termed 'Staged non-compliance" when they claimed that they could not get me on the phone and closed my case; even though I spoke with them six times, which is documented with telephone billing records and with my recordings.

283)     I also recorded my examinations by Dr. Clymer and Dr. Prostic, in which they refused to perform proper physical examinations and fraudulently rated me at Maximum Medical Improvement. And again, this includes Dr. Prostic apologizing, plus Dr. Clymer explicitly stating that he was "not being paid enough money" to do a full examination; and was only following The Hartford's orders.

284)     I also have audio and video recordings of August 13th, 2014, when attorney Tim Elliot threatened me with physical violence, and the sequence of events up to and including Administrative Law Judge Kenneth Hursh assaulting me and filing a false police report with the City of Lenexa, KS.

These recordings also include the body cam footage of Judge Hursh and

attorney John M. Graham, Jr. in which you can clearly see that they are

laughing as they lie to the police; and that their accounts to the police are

false, as everything that occurred was recorded either in the transcript that

was already filed with the court or in the recordings that I began when Judge

Hursh and Mr. Graham became abusive after the hearing.

285)    The underlying fraudulent nature of the OnForce insurance billing and

the illegal nature of their enterprise with The Hartford and Berkshire

Hathaway are also documented both with their own website descriptions of

their policies; and with their marketing materials which include

representative from Berkshire Hathaway's United States Liability Insurance

explaining the entire insurance scheme for OnForce "Service Provider"

customers.

Wherefore I am seeking declaratory judgment that The Hartford

engaged from the very beginning in a illegal enterprise with Berkshire

Hathaway and OnForce; and conspired at all times subsequent to my

injury with health care providers, attorneys and judges to conceal the

original OnForce/Berkshire Hathawy/The Hartford enterprise and

conspiracies through long running and still ongoing patterns of

racketeering predicate acts as demonstrated by the full factual

pleadings and the available evidence.


COUNT II – ALLEGING CONSPIRACIES TO VIOLATE THE CIVIL

RIGHTS ACTS AGAINST ALL NAMED DEFENDANTS

The same factual backgrounds demonstrate that the motive of all named

defendants is and always was to interfere with the enforcement of my

contracts for workers compensation benefits with OnForce through civil

litigation and through obstruction of criminal investigations requested by me

to the Kansas Insurance Commission, The Kansas Department of Labor (and

specifically to KS DOL assigned Attorneys General), and criminal

complaints attempted to be filed with the City of Lenexa, KS Police

Department, The City of Overland Park, KS Police Department, and the

Johnson County, KS District Attorneys' office.

These acts include involvement directly by state judges in the Department of

Labor, and in the Johnson County KS District Court and in the Kansas

Supreme Court as detailed above.

WHEREFORE I seek declaratory judgment damages and injunctive relief

under sections 1981 through 1988 of the Civil Rights Acts.

COUNT III – Conspiracy to violate the Kansas Consumer Protection Act

OnForce was and WorkMarket is a supplier under the definitions of the

KCPA. Neither is or ever was an authorized reseller or agent of insurance

products in The State of Kansas.

I was a consumer of the OnForce.com service; as was Agilysys, the primary

contractor with Talbots' under whom I was a subcontractor.

The Hartford engaged in more than four years of deceptive and

unconscionable acts and practices in support of the illegal OnForce.com

insurance practices.

These practices included falsification and concealment of medical records in

conspiracy with the doctors chosen by The Hartford, who thus were agents

of The Hartford in their acts and practices in violation of the KCPA.

These practices also include the conspiracy with ALJ Hursh and ALJ Shelor

to cover up the underlying illegality of the OnForce/Hartford/Berkshire

Hathaway enterprises alleged herein.


COUNT III – ALLEGING TORTIOUS INTERFERENCE WITH CONTRACT

All of the named defendants were aware that I had private health insurance; and

all of the defendants were made aware of the disputed and allegedly illegal

nature of the OnForce/Hartford/Berkshire Hathaway Enterprise.

Though their individual and collective acts, these defendants and those elsewhere named interfered with my contracts for private health insurance; and with my contracts for medical care through the defendant health care providers named in the Sullivan v. University of Kansas Hospital Authority, et. Al. cases. I have suffered the loss of all health care and insurance benefits; plus the loss of all ability and rights to employment for the past eleven years.

This has also interfered with my rights to benefits via my contract with OnForce, which is not a legal workers compensaton contract; but which is a contract for the use of their software and website which explicitly promises workers compensation benefits to injured service providers.

COUNT IV – BREACH OF CONTRACT AGAINST HEALTH CARE PROVIDERS

The contracts to provide medical services include the obligation that I, as the patient, will pay the doctors if the insurers refuse to pay. Though the courts misinterpret such contracts, they are contracts between the patient and the doctor, even where insurance is offered as a means of payment.

These contracts include the duty to perform reasonable medical services. And uniquely and explicitly, the doctors named in these cases did not perform "negligent" medical services alone; but performed intentionally deficient medical care. In other words, they did not even do the examinations and tests

which are an expectation and duty of the physician under every health care contract.

This is in addition to and as an alternative theory of recovery from "medical malpractice which is a common law remedy not defined by statute, and thus not an exclusive remedy under Kansas law or Kansas Supreme Court interpretation.

COUNT V – ADA AND REHABILIATION ACT AGAINST HEALTH CARE PROVIDERS

In addition to their alleged motives in furtherance of the OnForce/Hartford/Berkshire Hathaway conspiracies; it is a mater of policy for these health care providers to refuse to acknowledge Tarlov Cyst Disease; to refuse to report Tarlov Cysts when found; and to refuse even referrals to Tarlov Cyst experts for diagnosis and treatment proper for Tarlov Cyst Disease.

This, again, is alleged not to be "negligence" and thus not exclusively medical malpractice; but rather is a conscious and intentional decision to conceal Tarlov Cysts when found and to deny services to patients with Tarlov Cysts.

This is also alleged as a "disparate impact" because a patient with Tarlov Cysts cannot receive the benefit of medical services such as diagnostics, MRIs, and even consultations and surgery when th health care providers refuse to diagnose, report or treat the Tarlov Cysts. A patient with both herniated discs

and Tarlov Cysts can never be cured by treating the herniated discs alone. But more importantly, a patient with both herniated discs and Tarlov Cysts will be denied all medical care for both as a part of the business practice of denying treatment to patients for Tarlov Cysts. Doctors will not do the discectomy when they know the Tarlov Cysts are also there and the prognosis from discectomy alone is poor.

COUNT VI – ALL RIGHTS TO RELIEF WHICH ARE AVAILABLE BASED UPON THE FACTS, IN COMPLIANCE WITH RULE 54(C) AND HALL V. BELLMON

Because I am so severely disabled and not capable of completing proper legal pleadings, I am within my rights to request all relief to which I am entitled, whether asked for in my pleadings or not as a statutory mandate of all judgments by the court. And as the proper application of common law. This is further requested explicitly as a accommodation to my disabilities, which the court knows are the primary impediment to the successful litigation of these claims.

COUNT VII - Alleging Rehabilitation Act violations against The United States District Court for the District of Kansas, Judge Katherin Vratil, Judge Angel D Mitchell, Judge Theresa James, Judge Julie Robinson, Judge Rachel Schwartz

COUNT VIII - Alleging Civil Rights violations against The United States District Court for the District of Kansas, Judge Katherin Vratil, Judge Angel D Mitchell, Judge Theresa James, Judge Julie Robinson, Judge Rachel Schwartz

286)    I am aware that the judges and the court itself will object to me filing claims against the court and the judges; and that doing so will likely lead to retaliation which could fatally obstruct my access to medical care, putting me in genuine danger of wrongful death.

287)    However, the constitutional right to *petition the court for redress of grievances is guaranteed.* And if that right being exercised leads to potentially fatal consequences for the petitioner via retaliation and denial of the further rights to relief against the named defendants; then the citizen must be allowed to petition for an end to the litigation abuse engaged in by judges.

79

288)    To further expand upon this point, the right to appeal is NOT a sufficient redress when the plaintiff needs medical care now, and the abusive acts and practices of the court delay that medical care for more than four years and counting. It is said that "Justice delayed is justice denied"; and medical care delayed can be fatal. So when justice is wrongfully denied and there are plausible reasons to believe that it is being denied intentionally and with malicious motives, enjoining the further denials of justice can and in this case IS necessary to ensure my future survival.

289)    Furthermore, the mere fact that I am alleging this and some other claims which this court and these judges are politically opposed to, and even those claims where my rights to relief will only begin when the current controlling case law is corrected; that fact does not make my claims frivolous or even a violation of FRCP Rule 11, which permits any citizen to petition the court for changes to controlling law or even for creating of new controlling law. In other words, my claims are just and justifiable *even if* they are technically not justiciable under currently applied case law. ALL of Rule 11 grounds for petition for redress are protected by the First Amendment to The United States Constitution.

290)    Retaliation by any government official, including by judicial officers (a.k.a. attorneys) and judges is a de facto violation of the guaranteed rights

of petition, redress of grievances, due process, trial by jury, and equal

protection of the law, because retaliation itself is a deterrent and a denial of

the underlying rights which are sought to be vindicated.

291)    The judges demonstrated acts and motives of retaliation from the very

first moment that my first claims were presented to the court, as described

more fully above and incorporated herein by reference.

292)    Even the fact of portraying me as a "vexatious litigant" on the grounds

that I was physically and psychologically incapable of meeting pleading

standards and writing briefs to the standards demanded by my judges were

acts in the presently filed cases of retaliation against me for the claims that I

brought in the previously filed cases. This is demonstrated by language in

the judgments and Reports and Recommendations such as "Mr. Sullivan is

no stranger to the court" and the court and opposing counsel's persistent

mischaracterization of my previous claims as dismissed upon the merits and

affirmed by the Tenth Circuit.

293)    Both in the District of Kansas and in the Tenth Circuit the dismissals

of my claims and my appeals were explicitly attributed to my failure to write

proper legal pleadings, motions and briefs to the standards that "we were

taught in law school."

294)     At no time has any judgment ever been rendered against me consistent

with the facts; including both the facts already documented with evidence in

the court's records and with the facts alleged which I have not yet been

afforded the opportunity to fully document via discovery, depositions, cross

examination, and the ordered presentation of my evidence to the court.

295)     And as to the questions of law, those too were dismissed by the court

and the Tenth Circuit entirely upon the basis of my poor legal writing, which

is the result of my disabilities and not the result of me misinterpreting either

the original statutes or the relevant case law cited by opposing parties,

counsel, and the court.

296)     And my poor legal writing is ENTIRELY the result of my physical

and psychological disabilities; which have now gotten even worse due to

another four years of denials of medical care and even denials of mental

health care by the named defendants and by others.

297)     I alleged that I have been effectively "disenfranchised" from all

medical care; and that description includes within it the fact that I am unable

to get medical care for my heart condition, for my mental health conditions,

for my herniated discs and Tarlov Cysts which were caused by not just the

January 9th, 2012 injury; but also very substantially by the ten years of

denials of medical care and justice by almost every doctor, lawyer and judge

involved in my cases at every time and at every level of the disputes.

COUNT IX – RELIEF FROM JUDGMENT UNDER RULE 60

I am seeking relief under both Rule 60(b) and Rule 60(d).

Rule 60(d) provides no limitations on the court's equitable power to reverse a

judgment where manifest injustice would result.

I have been denied medical care for more than eleven years; and will continue

to be denied medical care for the rest of my life without relief from the acts and

practices engaged in by these defendants and still being engaged in to the

present day.

Rule 60(b) allows for relief due to error, including error as to the facts and the

law; even where that error is at least in part attributable to my inability to write

proper pleadings and the court's refusal to accommodate my disabilities via

appointment of counsel, liberal construction, and liberal leave to amend as

provided for in Hall v. Bellmon and other relevant precedent.

Both Rule 60(b) and (d) provide for relief due to fraud upon the court; which

puts me in a difficult position as to these claims; because here it is the judges

who committed what I allege to be fraud upon the court in their intentional

misapplication of 28 U.S.C. 1915 to dismiss claims for failure to state a claim

when the essence of the failure is disability, and not malicious or vexatious litigation as was intended when the Prison Litigation Reform Act was amended adding 12(b)(6) as ground for prescreening and dismissal. In other words, this provision was never intended to apply to disabled people whose disabilities are the cause of the failure to state a claim; but to malicious and vexatious people whose intent to harass and delay was the motive for stating non-justiciable claims.

My claims are justiciable, including my rights under Rule 11 to petition for grievances where current precedent misinterprets and misapplies the statutes; and the resultant judgments expand prior case law beyond what was said or intended by the courts issuing those prior precedents, as was correctly, if poorly, pleaded in my motions and briefs.

The refusal of the court to acknowledge the other portions of section 1915 which authorize appointment of counsel on the grounds that the congress did not explicitly fund appointment of civil counsel is alleged to be an attack against the rule of law and the authorized court procedures for preventing manifest injustice, particularly where disability is alleged and a central issue of the case.

.

COUNT X – RELIEF UNDER K.S.A. 60-518 VIA THE REOPENING OF MY
CLAIMS PURSUANT TO THE SAVINGS CLAUSE.

I am seeking relief under K.S.A. 60-518 on the basis that my claims were all
denied, not upon the merits, but upon my inability to write sufficient pleadings

Even in the case of the Civil Rights Act claims (where the only objection stated
by the court is lack of a racial animus) the case law does not explicitly require
racial animus, nor does the text of the statutes.

And in the cases under the ADA and Rehabilitation Act, the discrimination
against people with Tarlov Cyst Disease IS discrimination against everyone
who has the disease. It is only my inability to properly plead that fact and to
convince the judges that these defendants discriminate or provide disparate
impact violates the ADA. It is not a judgment on the merits as the ADA and RA
do not include an exemption for health care providers and the case law from
which that exemption derives explicitly states the exception to the exemption
being the instance in which the discrimination is practiced against everyone
with the specified disability.

Claims dismissed on any basis other than the merits may be refiled within six
months. These claims were dismissed on May 26th, 2022 for failure to state a

claim, without service of process or responses from defendants; and without discovery and adjudication of the facts disputed only by the judges themselves.

## COUNT XI – INTENTIONAL INFLICTION OF MENTAL ANGUISH AND EMOTIONAL DISTRESS

The psychological abuse which I have been subjected to, including without limitation the threats of murder, physical assaults, and systematic "Gaslighting" have been intentional acts intended to cause mental illness in addition to the physical disability caused by the intentional obstruction of my medical care

## COUNT XII – PERSONAL INJURY

I have suffered potentially irreversible nerve damage; and financial damage from which I will never recover; particularly as I have been rendered completely unemployable and my claims for workers compensation and or social security disability and other disability based benefits have been and are still being obstructed by the ongoing acts and practices of the named defendants.

COUNT XII – RACKETEERING VERSUS MCANANY, VAN CLEAVE AND PHILLIPS

McAnany, Van Cleave and Phillips conduct annual workers compensation seminars at which they provide training to claims adjusters for The Hartford, Berkshire Hathaway, and other workers compensation insurers.

On August 7th, 2014 I attended the annual workers compensation seminar hosted by MVP, and recorded the presentations by Greg Goheen, Darryl Wynn, Jodi Fox and more.

Within these seminars, they focused upon the practice of denying benefits and medical care as a means of extorting "Global Settlement Releases"

IN attendance at that training were my claims adjusters Laduska Anne Haney and her supervisor Carol Morris.

The practice of withholding medical care and benefits to extort global settlement releases constitutes statutory frauds under the workers compensation act; and common law frauds outside of the workers compensation act. As taught by MVP attorneys, it includes withholding medical diagnosis and using MVP recommended doctors to provide evaluations favorable to the insurer, irrespective of the actual medical needs of the patient.

87

I specifically spoke with Greg Goheen about my case, and he denied representation on the grounds that they regularly represent The Hartford. I was unaware when I received the announcement of the Annual Workers Compensation Seminar via FaceBook from Greg Goheen that they only represent insurers and what the nature of their training would be.

This pattern of training insurers and employers fraudulent practices is beyond the scope of representation for attorneys and law firms. It is an act of alleged conspiracy and racketeering which they use to solicit business from insurers and to then fraudulently represent those claims in workers compensation courts.